1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10
11   RUBICEL AGUILAR PEREZ,              )   Case No. SA CV 12-1043-SP
                                         )
12                   Petitioner,         )   MEMORANDUM OPINION AND
                                         )   ORDER
13           v.                          )
                                         )
14   WASCO STATE PRISON,                 )
                                         )
15                   Respondent.         )
                                         )
16                                       )
17   _____)

18                                 **I.**

19                          **INTRODUCTION**

20           On June 25, 2012, petitioner filed a Petition for Writ of Habeas Corpus by a
21   Person in State Custody ("Petition"), challenging a 2010 conviction and sentence in
22   Orange County Superior Court.  Petitioner was convicted of lewd and lascivious
23   act against a child, attempted forcible rape, and assault with intent to commit a
24   sexual offense, for which petitioner was sentenced to twenty-one years to life in
25   prison.
26           In his Petition, petitioner raises a single ground of relief – that his trial
27   counsel was ineffective for not objecting to the prosecutor's improper questioning
28

                                        1

1  of petitioner in three respects during cross-examination, which inflamed the jury
2  and deprived petitioner of a fair trial.

3        On October 2, 2012, respondent filed an Answer to the Petition ("Answer"),
4  with a Memorandum of Points and Authorities in Support of the Answer.
5  Petitioner did not file a reply to the Answer.

6        Both petitioner and respondent consented to proceed for all purposes before
7  the Magistrate Judge pursuant to 28 U.S.C. § 636(c).  With the parties' briefing
8  complete, the matter is now ready for decision.

9        After carefully considering the parties' submissions and the applicable law,
10 the court finds that petitioner is not entitled to habeas relief, for two reasons.  First,
11 in two of the portions of the cross-examination where petitioner contends his
12 counsel was ineffective for failing to object, his counsel did in fact object.  And
13 second, because this court finds the California courts did not unreasonably apply
14 federal law or unreasonably determine the facts in rejecting petitioner's claims of
15 prosecutorial misconduct and ineffective assistance of counsel, petitioner suffered
16 no prejudice and therefore did not receive ineffective assistance of counsel.
17 Accordingly, the Petition will be denied.

**II.**

**STATEMENT OF FACTS[1]**

**A.**   **Count 1 – Lewd and Lascivious Conduct Against a Child**

      In September 2008, an obstetrician confirmed that Y., then 12 years old, was
24 weeks pregnant. Y. claimed she had not engaged in sexual intercourse with
anyone, and did not know how she could have become pregnant.  At the time Y.
likely became pregnant, she, her parents ([petitioner] and J.T.), and two younger

---

[1]   The facts set forth are drawn verbatim from the California Court of Appeal's
decision on direct appeal.  Lodgment No. 5.  Such factual statement is presumed
correct.  28 U.S.C. § 2254(e)(1).

2

1  siblings, were living in one bedroom of a house in Santa Ana. Y. and a younger
2  sibling shared one bed, while [petitioner], J.T., and the other younger sibling
3  shared the other bed.  Eight other families lived in the same house.

4      When [petitioner] learned Y. was pregnant, he cried and asked what had
5  happened and who had done it.  At a meeting among [petitioner], J.T., Y., and the
6  principal and the nurse of Y.'s school, [petitioner] said he did not know who got Y.
7  pregnant and he and J.T. never let Y. out of their sight.  [Petitioner] also said Y.
8  might have become pregnant from a toilet seat.

9      During the time it is likely that Y. became pregnant, J.T. was a stay-at-home
10 mother.  [Petitioner] worked six days a week, leaving for work at 9:00 a.m. and
11 returning at 10:00 p.m., with Wednesdays off.  Y. left for school at 7:00 a.m. and
12 returned at 2:00 p.m., and was generally in bed by 9:00 p.m.  Y. went to her aunt's
13 house every day after school.  Y. said she was never alone with [petitioner] on his
14 days off, and she could not remember any time she had been alone with him.  J.T.
15 had never witnessed any inappropriate conduct between [petitioner] and Y.

16     DNA samples were obtained from [petitioner], an uncle, a cousin, and an
17 unrelated male friend.  DNA testing after Y.'s baby was born excluded all samples
18 except for [petitioner]'s sample.  An expert witness for the prosecution testified
19 that [petitioner] was 200,000 times more likely than a randomly selected male to be
20 the father of Y.'s baby.

21 **B.  <u>Counts 2 and 3 – Attempted Rape and Assault with Intent to Commit a</u>**
22 **<u>Sexual Offense</u>**

23     C.A. was married to J.T.'s brother.  [Petitioner] and his family were renting a
24 room from C.A.'s family in 2007.  In September 2007, after taking a shower, C.A.,
25 wearing only a towel, entered her bedroom.  [Petitioner] was in C.A.'s bedroom;
26 the zipper of his pants was down, and he told her he wanted to have sex with her.
27 When C.A. refused, [petitioner] grabbed her by the shoulders and pushed her down

28

1  on the bed; they began to fight.  [Petitioner] grabbed C.A.'s wrists and told her
2  nobody would find out.  C.A. got one hand free, grabbed the telephone, and hit
3  [petitioner] on the head.  [Petitioner] then released her.  C.A. told [petitioner] she
4  was going to call her husband and the police.

5       [Petitioner] went back to his own room, and C.A. dressed and went to her
6  sister's house.  C.A. showed her sister the marks on her hands, and told her what
7  had happened.  When C.A. returned home, she told J.T. that [petitioner] had
8  grabbed her, thrown her on the bed, and tried to rape her.  That evening, C.A.
9  confronted [petitioner] in front of C.A.'s husband and J.T., but [petitioner] denied
10 having attacked C.A.  C.A.'s husband said he would not beat up [petitioner], but
11 [petitioner] and his family would have to leave the house.

12      J.T. testified that C.A. had told her that [petitioner] opened her bedroom door
13 while she was getting dressed and had been disrespectful to her.  J.T. testified her
14 family moved out of C.A.'s house because the rent had gone up, they had to pay for
15 parking, and they wanted no further problems with C.A.

16      In September 2008, C.A. anonymously reported Y.'s pregnancy to
17 authorities.  At the same time, she reported the September 2007 incident involving
18 [petitioner].

19 **C.    Petitioner's Testimony**

20      [Petitioner] testified he never touched Y. inappropriately. When [petitioner]
21 asked Y. how she could have become pregnant, she told him she "never had
22 relations with anybody."  [Petitioner] voluntarily agreed to have his DNA tested.

23      [Petitioner] further testified that with respect to the incident involving C.A.,
24 the door to C.A.'s room opened when he knocked on it.  [Petitioner] claimed he
25 immediately apologized to C.A. and closed the door, and that he never touched
26 C.A. or said anything inappropriate to her.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.

### PRIOR PROCEEDINGS

On June 14, 2010, following a jury trial, petitioner was convicted of committing lewd and lascivious conduct against Y., accompanied by substantial sexual conduct and great bodily injury (Cal. Penal Code §§ 288, 1203.066, 12022.7) (count one), attempted forcible rape against C.A. (Cal. Penal Code §§ 261, 664) (count two), and assault with intent to commit a sexual offense against C.A. (Cal. Penal Code § 220) (count three).  Pet. at 2; Lodgment No. 1 (Clerk's Transcript ("CT")), at 186-88, 195, 197.  On July 30, 2010, the trial court sentenced petitioner to fifteen years to life in prison for count one, with an additional sentence of six years for counts two and three.  CT at 191-92, 195, 197.

Petitioner, represented by counsel, appealed his conviction and sentence, raising two grounds:  (1) he was deprived of his right to effective counsel when counsel failed to object to the prosecution's improper questions during the cross-examination of petitioner, thereby inflaming the jury and depriving petitioner of due process; and (2) the abstract of judgment must be corrected to reflect the appropriate custody credit of 622 days.  Lodgment No. 2.  On September 27, 2011, the California Court of Appeal denied ground one of petitioner's appeal but granted ground two, directing the trial court to modify the judgment to credit petitioner with 622 days of presentence custody credits.  Lodgment No. 5.

Petitioner filed a petition for review in the California Supreme Court, presenting again the ineffective assistance of counsel claim raised below. Lodgment No. 6.  The California Supreme Court summarily denied the petition for review on December 16, 2011.  Lodgment No. 7.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.**

**STANDARD OF REVIEW**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  AEDPA provides that federal habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2) (emphasis added).

In assessing whether a state court "unreasonably applied" Supreme Court law or "unreasonably determined" the facts, the federal court looks to the last reasoned state court decision as the basis for the state court's justification.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991); *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).  Here, the California Court of Appeal's opinion on September 27, 2011, stands as the last reasoned decision on the claim presented in the Petition.

**V.**

**DISCUSSION**

Petitioner alleges that his trial counsel rendered ineffective assistance.  Pet. at 5.  Specifically, petitioner contends that trial counsel "failed to object to the prosecution's flagrant misconduct, thereby inflaming the jury and depriving [petitioner] of due process and a fair trial under state and federal constitutions."  *Id.* He alleges the prosecutor: (1) "improperly asked [petitioner] to comment on the credibility of a key prosecution witness"; (2) "badger[ed] [petitioner] by

6

1  improperly and gratuitously injecting her own opinion of [petitioner's] guilt"; and

2  (3) "improperly attempted to elicit evidence she knew was inadmissible, irrelevant,

3  and likely to inflame the jury." *Id.*  This claim does not warrant habeas relief.

4       The Sixth Amendment guarantees a right to effective assistance of counsel.

5  *See Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674

6  (1984).  To establish an ineffective assistance of counsel claim, a petitioner must

7  establish:  (1) counsel's performance fell below an "objective standard of

8  reasonableness" under prevailing professional norms; and (2) the deficient

9  performance prejudiced the defense.  *Id.* at 687-88.  "The inquiry under *Strickland*

10  is highly deferential and 'every effort [must] be made to eliminate the distorting

11  effects of hindsight, to reconstruct the circumstances of counsel's challenged

12  conduct, and to evaluate the conduct from counsel's perspective at the time.'"

13  *Greenway v. Schriro,* 653 F.3d 790, 802 (9th Cir. 2011) (quoting *Strickland*, 466

14  U.S. at 689); *see also Earp v. Cullen*, 623 F.3d 1065, 1074 (9th Cir. 2010).

15       Regarding the first prong, there is a "strong presumption that a counsel's

16  conduct falls within a wide range of reasonable professional assistance."

17  *Strickland*, 466 U.S. at 689.  As for the second prong, a petitioner must show that

18  there is a reasonable probability that but for counsel's unprofessional errors, the

19  result would have been different.  *Id.* at 694; *Towery v. Schriro*, 641 F.3d 300, 315

20  (9th Cir. 2010).  "A reasonable probability is a probability sufficient to undermine

21  confidence in the outcome."  *Williams v. Taylor*, 529 U.S. 362, 391, 120 S. Ct.

22  1495, 146 L. Ed. 2d 389 (2000) (quoting *Strickland*, 466 U.S. at 694).  The focus of

23  the prejudice inquiry is "whether counsel's deficient performance renders the result

24  of the trial unreliable or the proceeding fundamentally unfair."  *Lockhart v.*

25  *Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993).

26

27

28

**A.** **Petitioner's Trial Counsel's Failure to Object to the Prosecution's Question Asking Petitioner to Comment on the Credibility of a Witness Did Not Constitute Ineffective Assistance of Counsel**

During his case in chief at trial, petitioner testified as a witness in his own behalf and was cross-examined by the prosecution. Lodgment No. 8 (Reporter's Transcript ("RT")), at 306-39. During cross-examination, the prosecutor asked petitioner if his wife had confronted him about wanting to have sex with C.A., to which petitioner answered: "Yes. At night when her brother [C.A.'s husband] arrived." *Id.* at 327. The prosecutor then asked petitioner if everyone was upset, to which petitioner responded that his brother-in-law and sister-in-law were. *Id.* When the prosecutor continued by asking if petitioner's wife was not upset with him, petitioner said she was not. *Id.* The prosecutor then asked: "So C.[A.] is lying?" *Id.* Petitioner's trial counsel did not lodge an objection to this question.

In the instant Petition, petitioner contends his trial counsel was ineffective for failing to object when the prosecutor "improperly asked [petitioner] to comment on the credibility of" C.A. Pet. at 5. Based on a similar but more detailed argument petitioner made on direct appeal, it appears this contention by petitioner refers to the prosecutor's question to petitioner about whether C.A. had lied. *See* Lodgment No. 2 at 15-18. Citing the California Supreme Court's decision in *People v. Chatman*, 38 Cal. 4th 344, 42 Cal. Rptr. 3d 621, 133 P.3d 534 (2006), which identified trial situations in which "were they lying" questions would be proper, the Court of Appeal concluded that petitioner, as one who was "a percipient witness to the events at issue" and who "intimately knew all those involved," "might have provided relevant testimony regarding the relative credibility" of petitioner's wife's versus C.A. Lodgment No. 5 at 7. Thus, the court ruled that "[t]he cross-examination was not improper." *Id.*

8

1    Applying the appropriate deference to be accorded to state court decisions on

2  habeas review, this court does not find that the Court of Appeal's decision "was

3  contrary to, or involved an unreasonable application of, clearly established Federal

4  law, as determined by the Supreme Court of the United States," or "resulted in a

5  decision that was based on an unreasonable determination of the facts in light of

6  the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(1)-

7  (2). Instead, the court finds the Court of Appeal appropriately applied *Chatman* to

8  the prosecutor's question and found the question to be proper under the

9  circumstances. Because this court agrees with the Court of Appeal that the

10  prosecutor did not pose an improper question, the court also finds that petitioner's

11  counsel's failure to object to the question had no prejudicial effect on the outcome

12  of petitioner's case. *See Williams*, 529 U.S. at 391. Accordingly, petitioner's

13  ineffective assistance of counsel claim lacks merit.

14  **B.**    **Petitioner's Ineffective Assistance of Counsel Claim Regarding**

15         **Improper Badgering Fails Because His Trial Counsel Did in Fact Object**

16    During the prosecution's cross-examination of petitioner, petitioner denied

17  throwing C.A. on the bed and wanting to have sex with her. RT at 328. Petitioner

18  then added, "Why? I have my wife," to which the prosecutor responded, "And your

19  daughter." *Id.* Petitioner's counsel objected, and the trial court sustained the

20  objection to the question as argumentative. *Id.*

21    In the Petition, petitioner contends his trial counsel was ineffective for

22  failing to object when the prosecutor badgered petitioner by the improper and

23  gratuitous injection of the prosecutor's personal opinion of petitioner's guilt. Pet.

24  at 5. Once again, this brief contention appears to be the same as petitioner's more

25  detailed contention on direct appeal that the prosecutor committed misconduct with

26  her line of questioning that concluded in the question (or editorial comment), "And

27  your daughter." *See* Lodgment No. 2 at 18-19.

28

1    As noted above, the trial transcript clearly shows that petitioner's trial

2  counsel did object and the trial court sustained the objection.  RT at 328.  Thus,

3  petitioner's ineffective assistance of counsel claim based on failure to object in this

4  instance must fail.

5    Furthermore, even if counsel had failed to object, this court agrees with the

6  Court of Appeal's decision that the prosecutor's questioning – the "single instance

7  of argumentative cross-examination" – was "nowhere near the level of

8  [prosecutorial] misconduct," marked by "persistent, highly inflammatory

9  questioning and argument," which was recognized as having a prejudicial effect in

10  California case law.  *See* Lodgment No. 5 at 7-9 (citing *People v. Hudson*, 126 Cal.

11  App. 3d 733, 735, 179 Cal. Rptr. 95 (1981) (a prosecutor who "resorted to

12  inflammatory rhetoric, violated the trial court's rulings, brought out inadmissible

13  matters in the guise of questions and statements, used extremely vulgar forms of

14  argumentative questions and injected prejudicial innuendo by his editorial

15  comments in front of the jury" was found to have committed prosecutorial

16  misconduct)).   At a minimum, this court finds the Court of Appeal's conclusion to

17  be neither an unreasonable application of clearly established federal law nor an

18  unreasonable determination of facts in light of the evidence presented at trial.  *See*

19  28 U.S.C. § 2254(d)(1)-(2).

20    Because petitioner's trial counsel did object to the prosecutor's question and

21  comment that petitioner characterizes as improper badgering, and because in any

22  event the Court of Appeal reasonably concluded that the prosecutor did not commit

23  misconduct, petitioner's ineffective assistance of counsel claim lacks merit.

24  //

25  //

26  //

27  //

28

1  **C.**    **Petitioner's Ineffective Assistance of Counsel Claim Regarding**

2      **Improper Elicitation of Evidence Fails Because His Trial Counsel Did in**

3      **Fact Object**

4          During the prosecution's cross-examination of petitioner, the prosecutor

5  asked petitioner, "do you masturbate?"  RT at 329.  Before petitioner answered,

6  petitioner's counsel objected, citing relevance, and the court sustained the

7  objection.  *Id.*  The prosecutor then asked petitioner whether he had told Susanna

8  Heapy (Y.'s school nurse) that his daughter became pregnant from a toilet seat, to

9  which counsel objected, citing misstatement of the evidence, but the court

10  overruled the objection.  *Id.*  Petitioner answered that he had not said that.  *Id.*  The

11  prosecutor asked again whether he had told Heapy that his daughter must have

12  gotten pregnant from a toilet seat.  *Id.*  Petitioner then changed his response and

13  affirmed that he had said that to Heapy but not to his daughter.  *Id.*  Then the

14  prosecutor asked again whether petitioner masturbated, to which petitioner's

15  counsel objected again, and the court again sustained the objection.  *Id.* at 330.

16  The court added, "I'm assuming that no counsel are taking the position that the

17  toilet seat theory is a legitimate one, and therefore I will sustain the objection."  *Id.*

18          Later in the same cross-examination, the prosecutor asked petitioner whether

19  it was "illegal in Mexico to have sex with your daughter," to which petitioner's

20  trial counsel objected for lack of foundation and the court sustained, explaining that

21  the question "[c]alls for a legal conclusion."  *Id.* at 338.  Next the prosecutor asked

22  petitioner if he thought it was "wrong to have sex with your biological daughter,"

23  to which petitioner answered in the affirmative.  *Id.*  The prosecutor then asked

24  petitioner if it was "pretty disgusting if someone were to have sex with their

25  biological daughter," to which petitioner also answered in the affirmative.  *Id.*

26  Then the prosecutor asked: "And for you to admit that you had sex with your

27  daughter would make you a very disgusting individual, wouldn't it?"  *Id.*  Before

28

1  petitioner responded, his counsel objected, citing improper question, after which
2  the prosecutor withdrew the question.  *Id.*

3        In the Petition, petitioner contends his trial counsel was ineffective for
4  failing to object when "the prosecutor improperly attempted to elicit evidence she
5  knew was inadmissible, irrelevant, and likely to inflame the jury."  Pet. at 5.  Once
6  again, petitioner made this argument on direct appeal, there specifying that the
7  improper attempts to elicit in question were the portions of cross-examination just
8  recounted involving masturbation and whether it is disgusting to have sex with
9  one's daughter.  *See* Lodgment No. 2 at 19-22.

10        As noted above, the trial transcript clearly shows that petitioner's trial
11  counsel objected to each instance of allegedly improper elicitation of evidence by
12  the prosecution.  RT at 329, 330, 338; *see* Lodgment No. 2 at 19-22.  Thus,
13  petitioner's ineffective assistance of counsel claim based on failure to object must
14  fail.

15        Furthermore, even if counsel had not objected, this court agrees with the
16  Court of Appeal's rejection of petitioner's argument that the prosecutor committed
17  misconduct by asking irrelevant and prejudicial questions to inflame the jury.  *See*
18  Lodgment No. 5 at 9-11.  The court ruled that the prosecutor's questions "to
19  determine how defendant's semen could have entered Y.'s body, other than by an
20  act of sexual intercourse, were highly relevant," particularly since petitioner had
21  suggested to the school nurse that contact with a toilet seat might have led to Y.'s
22  pregnancy.  *Id.* at 10 (citing *People v. Wagner*, 13 Cal. 3d 612, 619, 119 Cal. Rptr.
23  457, 532 P.2d 105 (1975)).  Thus, the court ruled that the prosecutor did not
24  commit misconduct by asking those questions.  *Id.*

25        The Court of Appeal also ruled that it was not improper for the prosecutor to
26  ask petitioner if he would be a disgusting person if he had sexual relations with his
27  daughter.  *Id.* at 10-11.  The court noted that if the prosecutor had asked questions

28

1  knowing the answer would be inadmissible, it would be an act of bad faith. *Id.* at

2  10 (citing *People v. Parson*, 156 Cal. App. 3d 1165, 1170, 203 Cal. Rptr. 412

3  (1984)).  But the court found "no impropriety in the prosecutor's questions,"

4  because petitioner had already answered that "it would be 'disgusting' to have sex

5  with one's daughter." *Id.* at 11.  The court noted there was "sufficient evidence

6  from which the jury could infer that [petitioner] had had sex with his daughter,"

7  and thus the next question posed by the prosecutor, which was withdrawn upon

8  objection, was "unnecessary, but not misconduct." *Id.*  This court finds the Court

9  of Appeal's conclusion that the prosecutor did not engage in irrelevant and

10  inflammatory questioning to be reasonable in light of the evidence presented at

11  trial, and not contrary to clearly established federal law. *See* 28 U.S.C.

12  § 2254(d)(1)-(2).

13      Because petitioner's trial counsel raised objections to the prosecutor's

14  allegedly improper elicitation of evidence during the cross-examination of

15  petitioner, and because in any event the Court of Appeal reasonably concluded that

16  the prosecutor did not commit misconduct, petitioner's ineffective assistance of

17  counsel claim lacks merit.

18                          **VI.**

19                     **CONCLUSION**

20      IT IS THEREFORE ORDERED that Judgment shall be entered denying the

21  Petition and dismissing this action with prejudice.

22

23

24  DATED: January 29, 2013    _____

25                             SHERI PYM
                               United States Magistrate Judge

26

27

28

                            13