UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBICEL AGUILAR PEREZ,<br><br>        Petitioner,<br><br>        v.<br><br>WASCO STATE PRISON,<br><br>        Respondent. | Case No. SA CV 12-1043-SP<br><br>MEMORANDUM OPINION AND ORDER |

## I.
## INTRODUCTION

On June 25, 2012, petitioner filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition"), challenging a 2010 conviction and sentence in Orange County Superior Court. Petitioner was convicted of lewd and lascivious act against a child, attempted forcible rape, and assault with intent to commit a sexual offense, for which petitioner was sentenced to twenty-one years to life in prison.

In his Petition, petitioner raises a single ground of relief – that his trial counsel was ineffective for not objecting to the prosecutor's improper questioning

of petitioner in three respects during cross-examination, which inflamed the jury and deprived petitioner of a fair trial.

On October 2, 2012, respondent filed an Answer to the Petition ("Answer"), with a Memorandum of Points and Authorities in Support of the Answer. Petitioner did not file a reply to the Answer.

Both petitioner and respondent consented to proceed for all purposes before the Magistrate Judge pursuant to 28 U.S.C. § 636(c). With the parties' briefing complete, the matter is now ready for decision.

After carefully considering the parties' submissions and the applicable law, the court finds that petitioner is not entitled to habeas relief, for two reasons. First, in two of the portions of the cross-examination where petitioner contends his counsel was ineffective for failing to object, his counsel did in fact object. And second, because this court finds the California courts did not unreasonably apply federal law or unreasonably determine the facts in rejecting petitioner's claims of prosecutorial misconduct and ineffective assistance of counsel, petitioner suffered no prejudice and therefore did not receive ineffective assistance of counsel. Accordingly, the Petition will be denied.

## II.

## STATEMENT OF FACTS[1]

### A. Count 1 – Lewd and Lascivious Conduct Against a Child

In September 2008, an obstetrician confirmed that Y., then 12 years old, was 24 weeks pregnant. Y. claimed she had not engaged in sexual intercourse with anyone, and did not know how she could have become pregnant. At the time Y. likely became pregnant, she, her parents ([petitioner] and J.T.), and two younger

---

[1] The facts set forth are drawn verbatim from the California Court of Appeal's decision on direct appeal. Lodgment No. 5. Such factual statement is presumed correct. 28 U.S.C. § 2254(e)(1).

2

siblings, were living in one bedroom of a house in Santa Ana. Y. and a younger sibling shared one bed, while [petitioner], J.T., and the other younger sibling shared the other bed. Eight other families lived in the same house.

When [petitioner] learned Y. was pregnant, he cried and asked what had happened and who had done it. At a meeting among [petitioner], J.T., Y., and the principal and the nurse of Y.'s school, [petitioner] said he did not know who got Y. pregnant and he and J.T. never let Y. out of their sight. [Petitioner] also said Y. might have become pregnant from a toilet seat.

During the time it is likely that Y. became pregnant, J.T. was a stay-at-home mother. [Petitioner] worked six days a week, leaving for work at 9:00 a.m. and returning at 10:00 p.m., with Wednesdays off. Y. left for school at 7:00 a.m. and returned at 2:00 p.m., and was generally in bed by 9:00 p.m. Y. went to her aunt's house every day after school. Y. said she was never alone with [petitioner] on his days off, and she could not remember any time she had been alone with him. J.T. had never witnessed any inappropriate conduct between [petitioner] and Y.

DNA samples were obtained from [petitioner], an uncle, a cousin, and an unrelated male friend. DNA testing after Y.'s baby was born excluded all samples except for [petitioner]'s sample. An expert witness for the prosecution testified that [petitioner] was 200,000 times more likely than a randomly selected male to be the father of Y.'s baby.

**B.  Counts 2 and 3 – Attempted Rape and Assault with Intent to Commit a Sexual Offense**

C.A. was married to J.T.'s brother. [Petitioner] and his family were renting a room from C.A.'s family in 2007. In September 2007, after taking a shower, C.A., wearing only a towel, entered her bedroom. [Petitioner] was in C.A.'s bedroom; the zipper of his pants was down, and he told her he wanted to have sex with her. When C.A. refused, [petitioner] grabbed her by the shoulders and pushed her down

3

on the bed; they began to fight. [Petitioner] grabbed C.A.'s wrists and told her nobody would find out. C.A. got one hand free, grabbed the telephone, and hit [petitioner] on the head. [Petitioner] then released her. C.A. told [petitioner] she was going to call her husband and the police.

[Petitioner] went back to his own room, and C.A. dressed and went to her sister's house. C.A. showed her sister the marks on her hands, and told her what had happened. When C.A. returned home, she told J.T. that [petitioner] had grabbed her, thrown her on the bed, and tried to rape her. That evening, C.A. confronted [petitioner] in front of C.A.'s husband and J.T., but [petitioner] denied having attacked C.A. C.A.'s husband said he would not beat up [petitioner], but [petitioner] and his family would have to leave the house.

J.T. testified that C.A. had told her that [petitioner] opened her bedroom door while she was getting dressed and had been disrespectful to her. J.T. testified her family moved out of C.A.'s house because the rent had gone up, they had to pay for parking, and they wanted no further problems with C.A.

In September 2008, C.A. anonymously reported Y.'s pregnancy to authorities. At the same time, she reported the September 2007 incident involving [petitioner].

## C. Petitioner's Testimony

[Petitioner] testified he never touched Y. inappropriately. When [petitioner] asked Y. how she could have become pregnant, she told him she "never had relations with anybody." [Petitioner] voluntarily agreed to have his DNA tested.

[Petitioner] further testified that with respect to the incident involving C.A., the door to C.A.'s room opened when he knocked on it. [Petitioner] claimed he immediately apologized to C.A. and closed the door, and that he never touched C.A. or said anything inappropriate to her.

## III.

## **PRIOR PROCEEDINGS**

On June 14, 2010, following a jury trial, petitioner was convicted of committing lewd and lascivious conduct against Y., accompanied by substantial sexual conduct and great bodily injury (Cal. Penal Code §§ 288, 1203.066, 12022.7) (count one), attempted forcible rape against C.A. (Cal. Penal Code §§ 261, 664) (count two), and assault with intent to commit a sexual offense against C.A. (Cal. Penal Code § 220) (count three).  Pet. at 2; Lodgment No. 1 (Clerk's Transcript ("CT")), at 186-88, 195, 197.  On July 30, 2010, the trial court sentenced petitioner to fifteen years to life in prison for count one, with an additional sentence of six years for counts two and three.  CT at 191-92, 195, 197.

Petitioner, represented by counsel, appealed his conviction and sentence, raising two grounds:  (1) he was deprived of his right to effective counsel when counsel failed to object to the prosecution's improper questions during the cross-examination of petitioner, thereby inflaming the jury and depriving petitioner of due process; and (2) the abstract of judgment must be corrected to reflect the appropriate custody credit of 622 days.  Lodgment No. 2.  On September 27, 2011, the California Court of Appeal denied ground one of petitioner's appeal but granted ground two, directing the trial court to modify the judgment to credit petitioner with 622 days of presentence custody credits.  Lodgment No. 5.

Petitioner filed a petition for review in the California Supreme Court, presenting again the ineffective assistance of counsel claim raised below. Lodgment No. 6.  The California Supreme Court summarily denied the petition for review on December 16, 2011.  Lodgment No. 7.

## IV.
## STANDARD OF REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA provides that federal habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2) (emphasis added).

In assessing whether a state court "unreasonably applied" Supreme Court law or "unreasonably determined" the facts, the federal court looks to the last reasoned state court decision as the basis for the state court's justification. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991); *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). Here, the California Court of Appeal's opinion on September 27, 2011, stands as the last reasoned decision on the claim presented in the Petition.

## V.
## DISCUSSION

Petitioner alleges that his trial counsel rendered ineffective assistance. Pet. at 5. Specifically, petitioner contends that trial counsel "failed to object to the prosecution's flagrant misconduct, thereby inflaming the jury and depriving [petitioner] of due process and a fair trial under state and federal constitutions." *Id.* He alleges the prosecutor: (1) "improperly asked [petitioner] to comment on the credibility of a key prosecution witness"; (2) "badger[ed] [petitioner] by

improperly and gratuitously injecting her own opinion of [petitioner's] guilt"; and (3) "improperly attempted to elicit evidence she knew was inadmissible, irrelevant, and likely to inflame the jury." *Id.* This claim does not warrant habeas relief.

The Sixth Amendment guarantees a right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish an ineffective assistance of counsel claim, a petitioner must establish: (1) counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms; and (2) the deficient performance prejudiced the defense. *Id.* at 687-88. "The inquiry under *Strickland* is highly deferential and 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Greenway v. Schriro,* 653 F.3d 790, 802 (9th Cir. 2011) (quoting *Strickland*, 466 U.S. at 689); *see also Earp v. Cullen*, 623 F.3d 1065, 1074 (9th Cir. 2010).

Regarding the first prong, there is a "strong presumption that a counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. As for the second prong, a petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different. *Id.* at 694; *Towery v. Schriro*, 641 F.3d 300, 315 (9th Cir. 2010). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Taylor*, 529 U.S. 362, 391, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) (quoting *Strickland*, 466 U.S. at 694). The focus of the prejudice inquiry is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993).

A.     **<u>Petitioner's Trial Counsel's Failure to Object to the Prosecution's
       Question Asking Petitioner to Comment on the Credibility of a Witness
       Did Not Constitute Ineffective Assistance of Counsel</u>**

During his case in chief at trial, petitioner testified as a witness in his own behalf and was cross-examined by the prosecution. Lodgment No. 8 (Reporter's Transcript ("RT")), at 306-39. During cross-examination, the prosecutor asked petitioner if his wife had confronted him about wanting to have sex with C.A., to which petitioner answered: "Yes. At night when her brother [C.A.'s husband] arrived." *Id.* at 327. The prosecutor then asked petitioner if everyone was upset, to which petitioner responded that his brother-in-law and sister-in-law were. *Id.* When the prosecutor continued by asking if petitioner's wife was not upset with him, petitioner said she was not. *Id.* The prosecutor then asked: "So C.[A.] is lying?" *Id.* Petitioner's trial counsel did not lodge an objection to this question.

In the instant Petition, petitioner contends his trial counsel was ineffective for failing to object when the prosecutor "improperly asked [petitioner] to comment on the credibility of" C.A. Pet. at 5. Based on a similar but more detailed argument petitioner made on direct appeal, it appears this contention by petitioner refers to the prosecutor's question to petitioner about whether C.A. had lied. *See* Lodgment No. 2 at 15-18. Citing the California Supreme Court's decision in *People v. Chatman*, 38 Cal. 4th 344, 42 Cal. Rptr. 3d 621, 133 P.3d 534 (2006), which identified trial situations in which "were they lying" questions would be proper, the Court of Appeal concluded that petitioner, as one who was "a percipient witness to the events at issue" and who "intimately knew all those involved," "might have provided relevant testimony regarding the relative credibility" of petitioner's wife's versus C.A. Lodgment No. 5 at 7. Thus, the court ruled that "[t]he cross-examination was not improper." *Id.*

Applying the appropriate deference to be accorded to state court decisions on habeas review, this court does not find that the Court of Appeal's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(1)-(2). Instead, the court finds the Court of Appeal appropriately applied *Chatman* to the prosecutor's question and found the question to be proper under the circumstances. Because this court agrees with the Court of Appeal that the prosecutor did not pose an improper question, the court also finds that petitioner's counsel's failure to object to the question had no prejudicial effect on the outcome of petitioner's case. *See Williams*, 529 U.S. at 391. Accordingly, petitioner's ineffective assistance of counsel claim lacks merit.

**B.    Petitioner's Ineffective Assistance of Counsel Claim Regarding Improper Badgering Fails Because His Trial Counsel Did in Fact Object**

During the prosecution's cross-examination of petitioner, petitioner denied throwing C.A. on the bed and wanting to have sex with her. RT at 328. Petitioner then added, "Why? I have my wife," to which the prosecutor responded, "And your daughter." *Id.* Petitioner's counsel objected, and the trial court sustained the objection to the question as argumentative. *Id.*

In the Petition, petitioner contends his trial counsel was ineffective for failing to object when the prosecutor badgered petitioner by the improper and gratuitous injection of the prosecutor's personal opinion of petitioner's guilt. Pet. at 5. Once again, this brief contention appears to be the same as petitioner's more detailed contention on direct appeal that the prosecutor committed misconduct with her line of questioning that concluded in the question (or editorial comment), "And your daughter." *See* Lodgment No. 2 at 18-19.

1        As noted above, the trial transcript clearly shows that petitioner's trial
2   counsel did object and the trial court sustained the objection. RT at 328. Thus,
3   petitioner's ineffective assistance of counsel claim based on failure to object in this
4   instance must fail.
5        Furthermore, even if counsel had failed to object, this court agrees with the
6   Court of Appeal's decision that the prosecutor's questioning – the "single instance
7   of argumentative cross-examination" – was "nowhere near the level of
8   [prosecutorial] misconduct," marked by "persistent, highly inflammatory
9   questioning and argument," which was recognized as having a prejudicial effect in
10  California case law. *See* Lodgment No. 5 at 7-9 (citing *People v. Hudson*, 126 Cal.
11  App. 3d 733, 735, 179 Cal. Rptr. 95 (1981) (a prosecutor who "resorted to
12  inflammatory rhetoric, violated the trial court's rulings, brought out inadmissible
13  matters in the guise of questions and statements, used extremely vulgar forms of
14  argumentative questions and injected prejudicial innuendo by his editorial
15  comments in front of the jury" was found to have committed prosecutorial
16  misconduct)). At a minimum, this court finds the Court of Appeal's conclusion to
17  be neither an unreasonable application of clearly established federal law nor an
18  unreasonable determination of facts in light of the evidence presented at trial. *See*
19  28 U.S.C. § 2254(d)(1)-(2).
20       Because petitioner's trial counsel did object to the prosecutor's question and
21  comment that petitioner characterizes as improper badgering, and because in any
22  event the Court of Appeal reasonably concluded that the prosecutor did not commit
23  misconduct, petitioner's ineffective assistance of counsel claim lacks merit.
24  //
25  //
26  //
27  //
28

**C. Petitioner's Ineffective Assistance of Counsel Claim Regarding Improper Elicitation of Evidence Fails Because His Trial Counsel Did in Fact Object**

During the prosecution's cross-examination of petitioner, the prosecutor asked petitioner, "do you masturbate?" RT at 329. Before petitioner answered, petitioner's counsel objected, citing relevance, and the court sustained the objection. *Id.* The prosecutor then asked petitioner whether he had told Susanna Heapy (Y.'s school nurse) that his daughter became pregnant from a toilet seat, to which counsel objected, citing misstatement of the evidence, but the court overruled the objection. *Id.* Petitioner answered that he had not said that. *Id.* The prosecutor asked again whether he had told Heapy that his daughter must have gotten pregnant from a toilet seat. *Id.* Petitioner then changed his response and affirmed that he had said that to Heapy but not to his daughter. *Id.* Then the prosecutor asked again whether petitioner masturbated, to which petitioner's counsel objected again, and the court again sustained the objection. *Id.* at 330. The court added, "I'm assuming that no counsel are taking the position that the toilet seat theory is a legitimate one, and therefore I will sustain the objection." *Id.*

Later in the same cross-examination, the prosecutor asked petitioner whether it was "illegal in Mexico to have sex with your daughter," to which petitioner's trial counsel objected for lack of foundation and the court sustained, explaining that the question "[c]alls for a legal conclusion." *Id.* at 338. Next the prosecutor asked petitioner if he thought it was "wrong to have sex with your biological daughter," to which petitioner answered in the affirmative. *Id.* The prosecutor then asked petitioner if it was "pretty disgusting if someone were to have sex with their biological daughter," to which petitioner also answered in the affirmative. *Id.* Then the prosecutor asked: "And for you to admit that you had sex with your daughter would make you a very disgusting individual, wouldn't it?" *Id.* Before

petitioner responded, his counsel objected, citing improper question, after which the prosecutor withdrew the question. *Id.*

In the Petition, petitioner contends his trial counsel was ineffective for failing to object when "the prosecutor improperly attempted to elicit evidence she knew was inadmissible, irrelevant, and likely to inflame the jury." Pet. at 5. Once again, petitioner made this argument on direct appeal, there specifying that the improper attempts to elicit in question were the portions of cross-examination just recounted involving masturbation and whether it is disgusting to have sex with one's daughter. *See* Lodgment No. 2 at 19-22.

As noted above, the trial transcript clearly shows that petitioner's trial counsel objected to each instance of allegedly improper elicitation of evidence by the prosecution. RT at 329, 330, 338; *see* Lodgment No. 2 at 19-22. Thus, petitioner's ineffective assistance of counsel claim based on failure to object must fail.

Furthermore, even if counsel had not objected, this court agrees with the Court of Appeal's rejection of petitioner's argument that the prosecutor committed misconduct by asking irrelevant and prejudicial questions to inflame the jury. *See* Lodgment No. 5 at 9-11. The court ruled that the prosecutor's questions "to determine how defendant's semen could have entered Y.'s body, other than by an act of sexual intercourse, were highly relevant," particularly since petitioner had suggested to the school nurse that contact with a toilet seat might have led to Y.'s pregnancy. *Id.* at 10 (citing *People v. Wagner*, 13 Cal. 3d 612, 619, 119 Cal. Rptr. 457, 532 P.2d 105 (1975)). Thus, the court ruled that the prosecutor did not commit misconduct by asking those questions. *Id.*

The Court of Appeal also ruled that it was not improper for the prosecutor to ask petitioner if he would be a disgusting person if he had sexual relations with his daughter. *Id.* at 10-11. The court noted that if the prosecutor had asked questions

knowing the answer would be inadmissible, it would be an act of bad faith. *Id.* at 10 (citing *People v. Parson*, 156 Cal. App. 3d 1165, 1170, 203 Cal. Rptr. 412 (1984)). But the court found "no impropriety in the prosecutor's questions," because petitioner had already answered that "it would be 'disgusting' to have sex with one's daughter." *Id.* at 11. The court noted there was "sufficient evidence from which the jury could infer that [petitioner] had had sex with his daughter," and thus the next question posed by the prosecutor, which was withdrawn upon objection, was "unnecessary, but not misconduct." *Id.* This court finds the Court of Appeal's conclusion that the prosecutor did not engage in irrelevant and inflammatory questioning to be reasonable in light of the evidence presented at trial, and not contrary to clearly established federal law. *See* 28 U.S.C. § 2254(d)(1)-(2).

Because petitioner's trial counsel raised objections to the prosecutor's allegedly improper elicitation of evidence during the cross-examination of petitioner, and because in any event the Court of Appeal reasonably concluded that the prosecutor did not commit misconduct, petitioner's ineffective assistance of counsel claim lacks merit.

## VI.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered denying the Petition and dismissing this action with prejudice.

DATED: January 29, 2013

SHERI PYM
United States Magistrate Judge